Irving LANDES, Petitioner,

v.

OFFICE OF WORKERS' COMPENSATION PROGRAM, Delta Materials Corporation and Wausau Insurance Corporation, Respondents.

No. 92–1175.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 23, 1992.

Decided June 22, 1993.

Rehearing Denied Aug. 5, 1993.

James Bowers (argued), Bowers & Palmer, Chicago, IL, for petitioner.

Eileen M. McCarthy, Dept. of Labor, Appellate Litigation, Barbara J. Johnson, Donald S. Shire, Sol. Gen., Deborah E. Mayer, Dept. of Labor, Office of the Sol., Washington, DC, John H. Secaras, Sol. Gen., Dept. of Labor, Chicago, IL, Louis W. Rogers, Dept. of Labor, Office of Workers' Compensation Program, Washington, DC, for Office of Workers' Compensation Programs.

Curtis Gillespie, President, Delta Materials Corp., Brazil, IN, for Delta Materials Corp.

Richard M. Joiner (argued), Mitchell, Joiner & Hardesty, Madisonville, KY, for Wausau Ins. Co.

Linda M. Meekins, Ann McLaughlin, Lisa L. Lahrman, Benefits Review Bd., Executive Counsel, Clerk of the Bd., Washington, DC, for Benefits Review Bd.

Before FLAUM and RIPPLE, Circuit Judges, and KAUFMAN, Senior District Judge.*

FRANK A. KAUFMAN, Senior District Judge.

Landes, naming as appellees his employer, Delta Materials Corporation (Delta), the latter's alleged insurer, Wausau Insurance Company (Wausau), and the Director, Office of Workers' Compensation Programs, United States Department of Labor, appeals from a Decision and Order of the United States Department of Labor Benefits Review Board (Board) denying his claim for black lung benefits filed pursuant to Title IV of the Federal Coal Mine Health and Safety Act of 1969, as amended, 30 U.S.C. § 901 *et seq.* (the Act). Pursuant to that statute, benefits are awarded to a) coal miners who are totally disabled due to pneumoconiosis, a chronic respiratory and pulmonary disease associated with coal mine employment, or to b) their survivors, or to c) survivors of coal miners whose deaths were caused by pneumoconiosis.[1] The Board affirmed the last administrative decision denying Landes' claim for benefits. For the reasons set forth in this opinion, we reverse and remand.

I

Landes filed a claim for black lung benefits on July 28, 1978. That claim was approved by a United States Department of Labor deputy commissioner on July 23, 1979. By letter dated September 11, 1980, Delta, the identified responsible coal mine operator,[2] objected to the allowance of the claim, and timely sought administrative review. An administrative hearing was held on June 18, 1985 by Administrative Law Judge (ALJ) Avery. On January 7, 1985, Wausau had been made a party to the case because of the existence of a coverage dispute between Wausau and Delta in connection with an insurance policy issued by Wausau which was effective during portions of Landes' coal mine employment by Delta. That dispute involved the question of whether Delta's insurance policy with Wausau covered Landes' claim. That dispute has yet to be resolved. It may require resolution pursuant to this Court's within remand order. Because of their respective conclusions, none of the administrative and/or executive officials reached or decided questions pertaining to that dispute.

On December 30, 1985, ALJ Avery issued a Decision and Order denying Landes' claim for benefits. In so doing, the ALJ found that "the Claimant has proven an excess of 9 years of coal mine employment, but less than 10 years." *In re Landes,* No. 81–BLA–2623, slip op. at 5 (December 30, 1985) (Avery, ALJ). That finding was critical, as, under the applicable regulations, a coal miner with ten years of qualifying coal mine employment has a lesser burden of proof than a miner

---

* The Honorable Frank A. Kaufman, Senior District Judge for the District of Maryland, is sitting by designation.

1. For a history of the black lung benefits program, *see Pauley v. BethEnergy Mines, Inc.,* 501 U.S. ——, ——, 111 S.Ct. 2524, 2527–31, 115 L.Ed.2d 604, 616–20 (1991); *Pittston Coal Group v. Sebben,* 488 U.S. 105, 108–11, 109 S.Ct. 414, 417–18, 102 L.Ed.2d 408, 416–18 (1988).

2. Although Landes worked for more than one employer during his years of employment as a coal miner, Delta is the identified responsible operator.

with a lesser period of employment. In finding that Landes had less than ten years of coal mine employment, ALJ Avery, in effect, credited Landes with four and one-half years of coal mine employment from 1948 until 1953, with four years and nine months of such employment from September, 1971 until the Delta mine closed on May 31, 1976, and with one month for reclamation work performed thereafter, yielding a total of nine years and four months of coal mine employment. *Id.* at 4–5. In sum, the ALJ concluded that Landes "ha[d] proven an excess of 9 years of coal mine employment, but less than 10 years." *Id.* at 5.

Because he found that Landes had shown less than ten years of coal mine employment, ALJ Avery held that Landes had the burden of establishing under the applicable regulations that he was totally disabled due to pneumoconiosis arising out of coal mine employment, applying more restrictive criteria than those effective had ten years of coal mine employment been shown. *Id.* at 6. Had ten years of coal mine employment been shown, the criteria set forth in 20 C.F.R. § 727.203 would have controlled. However, as ALJ Avery found less than ten years of coal mine employment, he never analyzed the medical evidence under the less restrictive criteria set forth in 20 C.F.R. § 727.203.

Landes appealed the decision of ALJ Avery to the United States Department of Labor Benefits Review Board (Board). On May 24, 1988, the Board affirmed the denial of benefits. The Board concluded that there was substantial evidence in the record to support ALJ Avery's finding of less than ten years of coal mine employment and that the ALJ had utilized a reasonable method of computation. *See Vickery v. Director, OWCP,* 8 BLR 1–430 (1986). *Landes v. Del-*

*ta Materials Corp. et al.,* No. 86–334 BLA, slip op. at 2–3 (May 24, 1988).

Thereafter, Landes timely petitioned the Department of Labor for modification of the adverse Board decision, pursuant to 20 C.F.R. § 725.310,[3] and submitted what he claimed was medical evidence of a change in his condition entitling him to modification. Landes also contended that a mistake had been made with regard to the determination that he had less than ten years of coal mine employment. The deputy commissioner of the Department of Labor to whom the case was assigned concluded that modification was unwarranted, finding no change of medical condition and no mistake concerning the determination of less than ten years of employment.

Pursuant to 20 C.F.R. § 725.310(c), Landes requested an administrative hearing, which was held by ALJ Mahony on February 16, 1990. On October 31, 1990, that ALJ declined to modify the denial of benefits, determining that Landes' testimony regarding the time spent by him in reclamation work was vague and that the prior finding of less than ten years of coal mine employment should not be disturbed. ALJ Mahony also concluded that Landes had not shown a change in medical condition entitling Landes to any relief. *In re Landes,* No. 90–BLA–42, slip op. at 3–4 (October 31, 1990) (Mahony, ALJ).

Landes appealed the decision of ALJ Mahoney to the Board. On November 25, 1991, the Board affirmed the decision of the ALJ, concluding that the prior determinations of the length of coal mine employment were based on a reasonable method of computation and were supported by substantial evidence, and rejecting Landes' contention that any deterioration in his medical condition re-

---

**3.** 20 C.F.R. § 725.310 provides in pertinent part:
(a) Upon his or her own initiative, or upon the request of any party on grounds of a change in conditions or because of a mistake in a determination of fact, the deputy commissioner may, at any time before one year from the date of the last payment of benefits, or at any time before one year after the denial of a claim, reconsider the terms of an award or denial of benefits.
(b) .... Additional evidence may be submitted by any party or requested by the deputy

commissioner. Modification proceedings shall not be initiated before an administrative law judge or the Benefits Review Board.
(c) At the conclusion of modification proceedings the deputy commissioner may issue a proposed decision and order (§ 725.418), forward the claim for a hearing (§ 725.421) or, if appropriate, deny the claim by reason of abandonment (§ 725.409).
*Id.* (emphasis added).

quired modification. *Landes v. Delta Materials Corporation et al.,* No. 91–0503 BLA, slip op. at 2 (November 25, 1991).

In this appeal from the Board's November 25, 1991, decision, Landes again seeks modification based upon a mistake of fact with regard to the determination that he had less than ten years coal mine employment and also based upon a change in medical condition. As to the former, Landes asserts that his years of coal mine employment should have been computed by applying the 125–day rule set forth in 20 C.F.R. § 718.301(b), which provides in pertinent part:

> For the purposes of the presumptions described in this subpart, a year of employment means a period of one year, or partial periods totalling one year, during which the miner was regularly employed in or around a coal mine by the operator or other employer. A "working day" means any day or part of a day for which a miner received pay for work as a miner. If an operator or other employer proves that the miner was not employed in or around a coal mine for a period of at least 125 working days during a year, such operator or other employer shall be determined to have established that the miner was not regularly employed for a year for the purposes of this section. If a miner worked in or around one or more coal mines for fewer than 125 days in a calendar year, he or she shall be credited with a fractional year based on the ratio of the actual number of days worked to 125....

That regulation does not specifically and affirmatively state that if a miner works 125 days in a given year, that period constitutes one year of work; but the regulation seemingly so implies and we so interpret it. *See Yauk v. Director, OWCP, U.S. Dept of Labor,* 912 F.2d 192, 195 (8th Cir.1989). Landes argues that, so applying the 125–day rule, he has established ten years of coal mine employment, entitling him to the benefit of the presumption of 20 C.F.R. § 727.203.[4] With-

---

4. 20 C.F.R. § 727.203 provides in pertinent part:

> (a) *Establishing interim presumption.* A miner who engaged in coal mine employment for at least 10 years will be presumed to be totally disabled due to pneumoconiosis, or to have been totally disabled due to pneumoconiosis at the time of death, or death will be presumed to be due to pneumoconiosis, arising out of that employment, if one of the following medical requirements is met:
>
> (1) A chest roentgenogram (X-ray), biopsy, or autopsy establishes the existence of pneumoconiosis ...;
>
> (2) Ventilatory studies establish the presence of a chronic respiratory or pulmonary disease ...;
>
> (3) Blood gas studies which demonstrate the presence of an impairment in the transfer of oxygen from the lung alveoli to the blood ...;
>
> (4) Other medical evidence, including the documented opinion of a physician exercising reasoned medical judgment, establishes the presence of a totally disabling respiratory or pulmonary impairment;
>
> (5) In the case of a deceased miner where no medical evidence is available, the affidavit of the survivor of such miner or other persons with knowledge of the miner's physical condition, demonstrates the presence of a totally disabling respiratory or pulmonary impairment.

In *Pittston Coal Group,* the Supreme Court held that the interim regulation §.727.203 violated 30 U.S.C. § 902(f)(2), which directed that, pending the issuance of new Department of Labor regulations, that Department was required to apply interim standards using "[c]riteria ... not ... more restrictive than the criteria applicable to a claim filed on June 30, 1973." As of that date, an interim regulation of the Department of Health, Education, and Welfare, 20 C.F.R. § 410.490(b) was in effect. The Supreme Court held that, under the circumstances before it, namely that the claimants in that case had less than ten years coal mine employment, § 727.203 violated § 902(f)(2) because it was more restrictive than § 410.490(b), since the former required the establishment of ten years of coal mine employment to invoke the presumption, whereas § 410.490(b) allowed a miner with less than ten years of coal mine employment to invoke the presumption by proving that his or her respiratory impairment arose out of coal mine employment. Justice Scalia, in the majority opinion, explained that as to the affirmative factors, criteria no more restrictive than in § 410.490(b) should be applied. 488 U.S. at 117–21, 109 S.Ct. at 421–23, 102 L.Ed.2d at 422–24.

In *Patrich v. Old Ben Coal Co.,* 926 F.2d 1482 (7th Cir.1991), Judge Cudahy, writing for this Court, noted that while the Supreme Court in *Pittston Coal Group* "refused ... to decide whether § 902(f)(2) extended ... to criteria on rebuttal or to criteria unrelated to the disability determination, 488 U.S. at 114, 119, 109 S.Ct. at 420, 422," this Court in *Taylor v. Peabody Coal Co.,* 892 F.2d 503 (7th Cir.1989) had held that "§ 902(f)(2) *did* apply to criteria on rebuttal, and therefore that the rebuttal provisions in §727.-203 could be no more restrictive (in this context *less* adverse to employers) than the comparable

out that presumption, in the light of the evidence presented by Delta, the employer, and by Landes, and in the light of the contentions advanced by Landes in the proceedings before ALJs Avery and Mahony, the deputy commissioner of the Department of Labor, and the Board, Landes cannot prevail in this appeal unless, at the very least, it be determined that he is totally disabled because of pneumoconiosis contracted as a result of his coal mine employment. However, with the benefit of the presumption set forth in 20 C.F.R. § 727.203, Landes is so able to prevail, as a miner with ten years of coal mine employment, by meeting one of certain medical tests as set forth in sub-section (a) of that regulation.

Landes also contends, as a separate basis for his within appeal, that ALJ Avery erred in the initial proceeding by failing to give Landes the benefit of what Landes asserts is a binding admission by Delta. Specifically, Landes points to a letter from Delta dated December 23, 1978, stating: "The exact date of his [Landes'] employment period was September 1st, 1971 thru Sept. 30, 1977," (Appellant's Appendix at 24). That is a period of more than six years. Landes emphasizes that ALJ Avery, however, only credited him with four years and nine months of employment for that period. Landes also refers to certain statements made during the administrative proceedings by counsel for Wausau and Delta to the effect that if reclamation work constitutes coal mine employment, then Landes may have had over ten years of qualifying employment. Alternatively, Landes asserts that, on an independent basis, he is entitled to modification of the decision denying him benefits based upon substantial evidence showing a change in his physical condition.

## II

In examining the Board's decision, " '[t]his court's role is to assure that the [Board] properly adhered to its standard of review which requires this court to examine the ALJ's factual determinations and the record.' " *Yauk v. Director, OWCP, U.S. Dept. of Labor*, 912 F.2d 192, 194 (8th Cir.1989) (quoting *Campbell v. Director*, 846 F.2d 502, 507 (8th Cir.1988)). " '[O]ur task is to review the judgment of the ALJ, which was upheld by the Board.' *Collins v. Old Ben Coal Co.*, 861 F.2d 481, 486 (7th Cir.1988) (citing *Dotson v. Peabody Coal Co.*, 846 F.2d 1134, 1137 (7th Cir.1988)). Our initial inquiry is whether the ALJ's decision was rational, supported by substantial evidence, and not contrary to law." *Peabody Coal Co. v. Shonk*, 906 F.2d 264, 267 (7th Cir.1990) (citations omitted). In that context, we review the determinations of the Board, the two ALJs, and the deputy commissioner.

## III

▪ To recapitulate, Landes asserts that the following errors occurred at one or more of the administrative or executive levels, namely: 1) the failure to find a significant change in medical condition, 2) the failure to consider and apply alleged binding admissions by Delta and/or Wausau of facts establishing ten years of coal mine employment by Landes, and 3) the failure to apply the 125–day rule. All of those contentions involve questions of fact or mixed questions of fact and law. The latter are treated by us as questions of fact for purposes of our review of the determinations by the deputy commissioner, the ALJs, and the Board under 20 C.F.R. § 725.310. As we explained in *Amax Coal Co. v. Franklin*, 957 F.2d 355 (7th Cir. 1992),

provisions under § 410.490. 892 F.2d at 506." 926 F.2d at 1485–86. Judge Cudahy indicated that § 727.203 was invalidated in *Pittston Coal Group* only with respect to those criteria which were more restrictive than those of § 410.490, and not for all purposes. In *Patrich* and in *Taylor* this Court has continued to consider § 727.203 viable in contexts in which the criteria of § 727.203 can be applied no more restrictively than those set forth in certain provisions of

§ 410.490. Thus, the affirmative criteria of § 727.203 are appropriately applicable to miners with at least ten years of coal mine employment; and "claims under § 727.203 by miners with less than ten years of qualifying employment must be analyzed under the § 410.490 invocation provisions which would include the requirement that the miner prove causation." *Patrich v. Old Ben Coal Co.*, 926 F.2d 1482, 1487 n. 11 (7th Cir. 1991).

"mixed question[s] of fact and law".... for many legal purposes (appellate review, for example) ... though they are not facts in the lay sense but are instead the outcome of applying legal standards to facts, are treated like facts, and one of these purposes we think should be that of deciding whether a black lung case can be reopened. This conclusion is consistent with the Supreme Court's holding in *O'Keeffe v. Aerojet–General Shipyards, Inc.*, 404 U.S. [254,] 256[, 92 S.Ct. 405, 407, 30 L.Ed.2d 424] [ (1971) (per curiam) ], that the reopening provision is to be interpreted generously to the claimant....

*Franklin*, 957 F.2d at 358. *Franklin* was a case involving 20 C.F.R. § 725.310. Thus, the errors alleged by Landes, involving questions of fact or mixed questions of fact and law, constitute appropriate bases for modification under 20 C.F.R. § 725.310; if they only presented issues of law, that regulation by its own terms would not be applicable.

■ One or more of appellees assert that this Court may not determine that the ALJ made a mistake in the determination of fact, as so to do would circumvent the appeals process. That contention is without merit. Section 725.310 speaks precisely to the contrary and provides for the exact review procedures which have taken place in this case. It is true that a deputy commissioner of the Department of Labor may not himself or herself, by his or her sole action, modify a mistake of an ALJ, and can only modify his or her own error. *See Director, Office of Workers' Compensation Programs, United States Dept. of Labor v. Kaiser Steel Corp.*, 860 F.2d 377, 379 (10th Cir.1988); *Director, Office of Workers' Compensation Programs, United States Dept. of Labor v. Peabody Coal Co.*, 837 F.2d 295, 298 (7th Cir.1988). However, a deputy commissioner may, if he or she determines that grounds exist making further examination of the miner's claim appropriate, assign the case for a further hearing by an ALJ. *See Saginaw Mining Co. v. Mazzulli*, 818 F.2d 1278, 1283 (6th Cir.1987). After the ALJ determines whether to modify, *see Eifler v. Office of Workers' Compensation Programs*, 926 F.2d 663, 666 (7th Cir. 1991), the ALJ's decision may be appealed to the Board pursuant to 33 U.S.C. § 921(b)(3), as incorporated in 30 U.S.C. § 932(a). The Board's decision, in turn, may be appealed to a federal court of appeals, such as this Court, pursuant to 33 U.S.C. § 921(c), as incorporated in 30 U.S.C. § 932(a). That is the process which was followed in the within case. Thus, we must now determine whether ALJ Mahony's decision not to modify was correct.

### IV

■ Landes has not shown a significant change of medical condition. Nor does the so-called admissions evidence indicate that Delta and/or Wausau intended to concede that Landes was entitled to credit for ten years of mine work.[5] However, the evidence in the record, independently of any such alleged "admissions", establishes without dispute that, utilizing the 125–day rule, Landes did have more than ten years of coal mine employment. Therefore, a finding to that effect is required on remand.

In none of the administrative or executive decisions which have been filed in this case has the 125–day rule been appropriately considered and applied. That rule, which is set forth in 20 C.F.R. § 718.301(b), became effective on April 1, 1980, and constituted the first general regulatory guideline for establishing the length of coal mine employment. *Dawson v. Old Ben Coal Co. et al.*, 11 BLR 1–58, 1–60 (1988). Previously, the length of employment was often calculated by the quarter method, in which the time that a miner worked was determined by adding up the quarters of years in which a miner worked. In the within case, ALJ Avery

5. Landes points to a letter from Delta dated December 23, 1978, stating: "The exact date of his [Landes'] employment period was September 1st, 1971 thru Sept. 30, 1977," (Appellant's Appendix at 24), and emphasizes that ALJ Avery only credited him with four years and nine months of employment for that period. The letter, however, does not specify whether the employment was continuous, although by itself it might suggest the same. However, any indication to that effect flowing either from that letter, or from statements made by counsel for Wausau and/or Delta, is overcome by the rest of the record, which shows that employment after the mine closed on May 31, 1976, was sporadic.

credited Landes with eighteen quarters, or four and one-half years of employment for the period from 1948 until 1953. "The 125-day rule is arguably more generous to the black lung claimant than the quarter method of computation." *Yauk*, 912 F.2d at 195. Under the 125-day rule, "if a miner can establish coal mine employment for 125 working days in a year, the miner will be credited with one year of coal mine employment." *Id.* Thus, under that rule, if twenty-two working days per month are allowed, *see id.*, for the period 1948–1953, the record establishes that Landes worked a total of five years during that period, rather than four and one-half years as ALJ Avery had computed.[6] Additionally, under the 125-day rule, during his second period of coal mine employment from September 1, 1971, until the mine closed on May 31, 1976, the record also shows that Landes worked a total of nearly five and two-thirds years during that period, rather than the four years and nine months computed by ALJ Avery.[7] When those two periods are added together, the sum reveals that Landes had well over ten years of qualifying coal mine employment, not even counting any reclamation work which he performed, thus requiring that the medical evidence be analyzed on remand under 20 C.F.R. § 727.203(a). As to reclamation work, the record established that Landes is entitled to some credit for reclamation work performed by him after the mine closed. However, because the inclusion or exclusion of an appropriate credit for such work will have no effect in this case once the 125-day rule is applied, that is of no moment.

One or more of appellees urges that ALJ Avery and the other administrative and/or executive officials whose actions are challenged in the within appeal utilized a reasonable method of computation of the length of employment and therefore that the Board's decision should be upheld by us in this appeal. While that method of computation may have been reasonable prior to the promulgation of the 125-day rule in 20 C.F.R. § 718.301, once that rule became effective and gave guidance concerning how the length of coal mine employment should be computed, it was no longer reasonable for ALJ Avery to calculate the length of Landes' employment without consideration and application of such guidance. While Landes first filed his claim prior to the effective date of § 718.301, his claim was presented to and adjudicated by ALJ Avery after the effective date of the regulation. In *Yauk*, as in this case, the original claim was filed prior to the promulgation of § 718.301, but was first considered and adjudicated after the regulation became effective. The Eighth Circuit, in *Yauk*, held that the ALJ had improperly determined the length of employment because of a failure to consider and to apply the 125-day rule. *Yauk*, 912 F.2d at 195–196; *see also Strike v. Director, Office of Workers' Compensation Programs, United States Dept. of Labor*, 817 F.2d 395, 406 (7th Cir. 1987) (where claim was filed prior to the enactment of Part 718 but was adjudicated after the enactment, claim should be analyzed, upon failing to meet the criteria to invoke the interim presumption of § 727.203, under Part 718, rather than under the older Part 410 regulations).

**6.** Social security records for the period 1948–1953 (Appellant's Appendix at 22) show that Landes worked one quarter, or sixty-six days in 1948. Applying the 125-day rule's direction that "[i]f a miner worked in or around one or more coal mines for fewer than 125 days in a calendar year, he or she shall be credited with a fractional year based on the ratio of the actual number of days worked to 125," 20 C.F.R. § 718.301(b), Landes should be credited with slightly more than half a year in 1948. Those social security records also show that Landes worked four quarters, or one year, in 1949; four quarters, or one year, in 1950; four quarters, or one year, in 1951; four quarters, or one year, in 1952; and one quarter, or sixty-six days, or, under the 125-

day rule, slightly more than half a year in 1953, for a total of five years for that period.

**7.** There is no dispute that Landes worked continuously from September 1, 1971, until the mine closed on May 31, 1976. *See* Appellee Wausau's Brief at 11. Therefore, under the 125-day rule, allowing twenty-two working days per month, Landes should have been credited with eighty-eight days, or slightly over seventy percent of a year in 1971, one year in 1972, one year in 1973, one year in 1974, one year in 1975, and 110 days, or eighty-eight percent of a year in 1976, for a total of nearly five and two-thirds years with regard to that period.

Furthermore, applying the 125–day rule, which "is arguably more generous to the black lung claimant than the quarter method of computation," *Yauk*, 912 F.2d at 195, is consistent with the remedial purpose of the Act. *Cf. Freeman United Coal Mining Co. v. Benefits Review Bd., United States Dept. of Labor*, 879 F.2d 245, 249 (7th Cir.1989) ("where ... the evidence conflicts as closely as here, we remind the ALJ of the remedial purpose of the Act and the stated need to resolve doubts in favor of a disabled miner or his survivor.").

## V

Accordingly, the decision of the Board is REVERSED, and this case is REMANDED to the Board so that the Board can require further appropriate proceedings. In those proceedings, the 125–day rule shall be utilized; Landes shall be credited with ten years or more of coal mine employment; and the medical evidence shall be considered under § 727.203(a). If, after the medical evidence is so considered, it is determined that an award of benefits is warranted, the issue of Wausau's liability under Delta's insurance policy with Wausau shall be decided.